STATE EX REL. INDIANAPOLIS BAR ASSOCIATION *v.* HARTMAN.

[No. 27,239. Filed November 6, 1939.]

*Thomas D. Stevenson, Hubert Hickam,* and *Carl Wilde,* for petitioner.

*Walter Myers,* and *Harvey Grabill,* for respondent.

PER CURIAM.—On June 1, 1939, the petitioner herein, after having obtained leave so to do, filed with the clerk of this court an instrument entitled "Information."

This information states that on February 11, 1932, one, Joseph E. Hartman, respondent herein, filed with the clerk of this Court his written application for admission to the Bar of Indiana on the form prescribed by the State Board of Law examiners, theretofore appointed by the Supreme Court of Indiana, pursuant to rules promulgated by said Court, and by virtue of authority granted by Chapter 64, Acts 1931, p. 150. That "Rule 41-10," of the rules adopted by this Court under the authority granted by the above act, contained a certain question, number 10, which question and the answer of said Joseph E. Hartman thereto were as follows:

"10. Have you ever been a party to any legal action, or otherwise involved in any legal proceeding? If so, state facts fully. Answer. No."

It is further stated that said answer to the above question was in the hand writing of Joseph E. Hartman, and was sworn to by him, as required by the rules of this Court. The statement and signature of the said Joseph E. Hartman and the jurat of the officer

by whom the required oath was administered to him are set out in the information and are as follows: ʼ

"State of Indiana ⎱ ss:
County of Marion ⎰

    The applicant being duly sworn says: I have read the foregoing questions and have answered the same in my own handwriting fully and frankly. The answers supplied by me are true of my own knowledge.

Signature of applicant
(Signed) Joseph Edward Hartman

    Sworn to before me this 11 day of February, 1932

(Signed) Robert Eby,
Notary Public

My commission expires
June 28, 1932. (Seal)"

    After respondent filed his said application with the clerk of this court, the same was referred to the Board of Law Examiners and was by said board referred to a committee on character and fitness; also theretofore appointed by this court, and acting in the Supreme Court Judicial District in which said applicant then lived. The committee on character and fitness, on March 4, 1932, after investigating said applicant's character and fitness, recommended said applicant to the State Board of Law Examiners for examination as to his legal qualifications. On March 8, 1932 said applicant was so examined, and on March 18, 1932, the said board recommended to this court that said applicant be admitted to the Bar of Indiana, and upon said recommendation, and by order of this court, he was duly admitted to the Bar of Indiana on April 9, 1932, and his name was placed upon the roll of attorneys, and the said Joseph E. Hartman has continuously since said date remained a member of the Indiana Bar.

The information further discloses that on or about November 1, 1938, the president of the Indianapolis Bar Association was informed that the answer made by the said Joseph E. Hartman to question number 10, as above set out, was false in that the said Joseph E. Hartman had been a party to various legal actions and proceedings, more specifically hereinafter stated. The information and supporting exhibits were, by the president of the Indianapolis Bar Association, transmitted to its grievance committee for investigation. Pursuant to such reference, said committee was called into session, and the said Joseph E. Hartman was notified to meet with said committee on November 4, 1938. At this meeting the said Joseph E. Hartman appeared, and was informed of the charges placed against him, and was given a copy of the same. At the request of the said Hartman, and with the consent of the members of said committee, the said Hartman was given time to prepare and present his defense to the charges made against him.

November 23, 1938, was the date set for a hearing, which was had. Joseph E. Hartman appeared in person, and was accompanied by two members of the Marion County Bar, who appeared as his personal friends rather than professionally. At this hearing, oral testimony was heard and received, and the said Hartman was permitted to testify fully concerning said charges. Further investigation was made by individual members of the committee. After the committee had completed its investigation, it made a written report to the Board of Managers of the Indianapolis Bar Association, and unanimously recommended that the charges so preferred against the said Joseph E. Hartman, together with the supporting exhibits and the transcript of the testimony, taken by said committee, be brought

immediately by appropriate proceedings to the attention of the Supreme Court for such action as said Court might deem proper.

At a meeting of Relator's Board of Managers, held for that purpose on December 28, 1938, said report was accepted, and a resolution was adopted to the effect that the president of the Indianapolis Bar Association appoint a committee of three to consider and execute the appropriate procedure to carry said report and recommendation into effect. Accordingly, three members of said association were appointed. Thereafter, on June 1, 1939, said committee filed the within information with this Court.

Respondent was duly notified of the filing of the information in this Court, and appeared thereto, and requested this Court to appoint two attorneys, namely Harvey A. Grabill and Walter Myers, to appear as his counsel in this matter, and asked that they serve without compensation. This Court so made the appointment, and on July 3, 1939, the said Joseph E. Hartman filed his response in this Court.

The information so filed in this Court charged that the negative answer made to question No. 10 in his application was false, in that the said Joseph E. Hartman had been a party to at least six different legal actions or proceedings.

Respondent in his response makes reply and answer to each of the six charges. The first legal proceeding, in which relator was charged as having been a party, and respondent's answer thereto is in substance as follows: (a) That on, or about, December 7, 1919, in the city of Indianapolis, Indiana, Joseph E. Hartman was arrested on the charge of receiving stolen goods; that he waived preliminary examination, and was bound over to the grand jury of Marion County, and was

indicted on the charge aforesaid, and was tried and acquitted of said charge in the Marion Criminal Court on March 2, 1920.

Respondent, in his response, makes the following statement in answer to the first charge: Prior to October, 1919, he had earned and saved from his employment in a drug store the sum of two hundred dollars with which he purchased a used automobile from a boy in the neighborhood. It later developed that the car had been stolen, a fact unknown to the relator at the time. He was arrested, but was soon thereafter released. Whether someone put up bond, he does not remember. Respondent's father employed an attorney to represent him. He says that he did not know at the time he made application for admission to the bar, and does not now know whether he was indicted for receiving stolen goods; whether he waived preliminary examination; whether he was bound over to the grand jury; whether he was tried in Criminal Court or any other Court; or whether he was acquitted; the only recollection he had at the time he made application, or has now, is that his attorney told him to appear on a certain date in Criminal Court, and to take a seat in that part of the court room reserved for spectators. He did appear, and he saw his attorney talking to the Judge on the bench, and soon thereafter his attorney came to him and told him he could go home; that everyone now understood that he was innocent of any wrong.

In specification (b) the information says that Joseph E. Hartman was defendant, and was personally served with process in cause No. 417137 in the Superior Court of Cook County, Illinois, entitled *Alberta Hartman* v. *Joseph E. Hartman,* which action was commenced on March 17, 1925, and was a suit for divorce; that respon-

dent did not defend said action, and that plaintiff therein was granted a decree of divorce on May 4, 1925.

Respondent, in his response, makes the following statement with reference to the above matter. He answers in substance; About March, 1925, respondent received a letter from an attorney in Chicago stating that he was representing Mrs. Hartman in her divorce proceeding, and requested respondent to call at his office. Respondent did call at the office of the attorney who informed him that Mrs. Hartman's complaint for a divorce was cruel and inhuman treatment. Respondent says that he paid said attorney $250.00 as a fee for his wife, but did not read the complaint filed against him. He was then directed to go to the sheriff's office for the purpose of being served with summons, which he did.

A certified copy of the divorce complaint, the evidence introduced at the trial, the summons served upon respondent and the Sheriffs return thereon, the judgment of the Court were submitted to the committee, filed as exhibits to the information herein. Said exhibits show that the cause alleged in the complaint for divorce was adultery. The evidence by the wife at the trial was to the effect that respondent had admitted to her that he had been guilty of adultery, and another witness testified that on a certain day, to-wit, February 25, 1925, she saw Joseph E. Hartman accompanied by a woman other than his wife, eating at a certain hotel, and that said Hartman, accompanied by this woman, went to a room in said hotel for the night; that he was registered under the name of "J. E. Hartman and wife" Room 1024. The evidence further shows that Alberta Hartman and Joseph E. Hartman were the parents of Dortha Jane Hartman who was five years old at the

time of the divorce in 1925, and that the Court ordered respondent to pay $7.00 per week for the support of said child.

Specification (c) charges, in substance, that while respondent and his brother operated a drug store in Chicago in 1924, their permit to sell liquor for medical purposes on prescriptions, issued by a duly licensed physician, was revoked by Federal Prohibition Director for the State of Illinois. It appears that said license was revoked because respondent and his brother had sold liquor on false and forged prescriptions.

Respondent admits that the license was revoked; that he and his brother received notice from the Federal agent to appear before him which they did. Some of the prescriptions which they had filled were found to be false and spurious. Later they received notice that their permit had been revoked.

From what appears to be copies of letters between the authorized agent of the Southern Surety Co., the surety on respondent's and his brother's bond in the above matter, and the director of Prohibition, a compromise on the liability of such surety was effected for the sum of $250.00.

Respondent states that he did not consider these proceedings legal proceedings within the meaning of the question here involved.

In specification (d) it is charged that in June, 1926, respondent was a resident of Dayton, Ohio; that on or about June 25, 1926, one Alpha M. Harrop commenced an action in the Court of Common Pleas of said city against the said Joseph E. Hartman. Said cause being No. 58379 of the record of said Court; that the plaintiff sought in said action to recover damages on account of an alleged assault with attempt to rape. Said action was defended by this respondent, and upon the trial

thereof by a jury, a verdict was returned against him for $500.00 for which amount judgment was entered against him on March 25, 1927. Said judgment was thereafter settled on May 16, 1927 for the sum of $400.00 paid by the said Joseph E. Hartman.

Respondent in his answer says that one Dewey H. Wysong was one of Mrs. Harrop's attorneys in said damage suit against him; that on April 1938, certain charges and specifications were made and filed by a committee appointed by one of the judges of the Court of Common Pleas of Montgomery County, Ohio, against the said Dewey H. Wysong, wherein the said Wysong was charged with certain misconduct which involved moral turpitude. The certified copy of the record shows that judgment of disbarment was entered against him, but the judgment did not become operative until the termination of all proceedings on appeal.

Further exhibits were introduced which show that other proceedings had been instituted in Dayton, Ohio, in 1922, 1923, to disbar the said Wysong, but the record does not disclose the result of said earlier proceedings. The conduct of the said Wysong in connection with the Harrop suit against respondent is nowhere mentioned in these disbarment proceedings, nor, as far as the record shows, is he criticised for bringing the action for Mrs. Harrop against respondent. We assume the exhibits relating to the proceedings against attorney Wysong was attached to respondent's response for the purpose of discrediting the action of the said attorney Wysong in bringing the action for Mrs. Harrop against him for damages.

In specification (e) of the information, it is charged that on February 6, 1931, said Joseph E. Hartman became a party to a proceeding then begun by one

Nattie Harris before the State Board of Real Estate Examiners for the State of Ohio, which proceeding was for the purpose of procuring the revocation of a license then held by said Joseph E. Hartman to engage in the brokerage business in said State.

Exhibit No. 17, submitted to the committee, and transmitted to this Court with the information herein, discloses that the cause of the above proceedings was that respondent made certain misrepresentations to the petitioner in the sale and purchase of a certain restaurant in the city of Dayton. The purchaser paid to respondent the sum of $150.00 as part purchase price, but upon the discovery of the alleged misrepresentations, she refused to go through with the transaction, and demanded the return of the money she had paid to respondent. Upon complaint being made, respondent returned $75.00, the amount of his commission, but refused to make good the remaining $75.00, because he had paid it to his client. Upon a hearing of the matter before the board, they determined that because of misrepresentations made by Mr. Hartman, he should return, on or before a date set, the money he had received, and in the event he should fail or refuse to so return the money, his brokerage license should be revoked. Mr. Hartman did not return the balance of the money, and later his license to engage in the brokerage business in Ohio was revoked in accordance with their previous order.

Respondent in effect admits the above facts, except he is silent as to the alleged misrepresentations.

In specification (f) it is shown that on February 9, 1932, said Joseph E. Hartman was named as the defendant in a suit for divorce filed by Ethyl Hartman, his second wife, in cause No. 12178B in the Court of Common Pleas for Montgomery County, Ohio. At that

time the said Joseph E. Hartman was a resident of Indiana, and process was had by publication. The application for admission to the Bar of Indiana was signed by Joseph E. Hartman on February 11, 1932. For that reason, the said Joseph E. Hartman may or may not have known of the filing of said divorce.

Respondent denies, in his response, that he had such knowledge at the time he made his application to be admitted to the bar.

The exhibits introduced at the hearing shows, however, that a divorce was granted to Ethyl Hartman on the ground of "Gross Neglect of Duty and Extreme Cruelty" as alleged in the petition.

Exhibit 15 filed with the information, and presented to the committee, is a purported affidavit, signed by Dewey H. Wysong, and in substance, the affidavit says that at the trial of the action for damages for assault with intent to rape, filed by Alpha M. Harrop against Joseph E. Hartman, as heretofore set out, the said Joseph E. Hartman, testified that he was never married before, and had no children; that he made the same statement four or five times. He was then presented with a certified copy of the decree of divorce rendered in Cook County, Chicago, Illinois, whereupon respondent admitted the fact that his wife had sued and obtained a divorce on the ground of adultery.

Respondent does not mention this affidavit in his response, nor does he refer to it in any manner whatsoever.

Exhibit No. 10 is a certified copy of a marriage certificate issued to respondent on October 8, 1925, as the same appears in the records of the County Clerk's office of Campbell County, Kentucky. This exhibit shows that an inquiry was made as to whether he was,

"single, widowed, or divorced," and the respondent answered that he was "single."

In clause 11, respondent says that he is a life member of a certain national legal fraternity; that he is a member of the Lawyers Association of the city of Indianapolis, and has served as one of its officers; that in 1936 he was nominated by his political party for the Senate, and in 1938 he was nominated by his political party for the judgeship of Room 3 of the Superior Court of Marion County, and that since his admission to the bar in April 1932, he has engaged in the general practice of law in the city of Indianapolis, and at no time have any complaints been made concerning his conduct, either socially or professionally.

In 1931 the Legislature passed an act which reads as follows:

"The Supreme Court of this State shall have exclusive jurisdiction to admit attorneys to practice law in all courts of the State under such rules and regulations as it may prescribe." Acts, 1931, Ch. 64, § 1, p. 150.

Thereafter this Court promulgated rules and regulations governing admissions to the bar, and therein provided for the appointment of a Board of Law Examiners, composed of five members, whose duty, among other things, was to make inquiry as to applicants' educational qualifications.

As one means adopted by the board to gain information as to applicant's moral qualifications, all applicants for admission to the bar were required to fill out a uniform questionnaire. One of the questions in said form was question No. 10, heretofore set out.

It requires no argument to reach the conclusion that the respondent, in withholding from the Board of Law

Examiners and from this Court, to whom application was made, the information which is now before the Court, contained in the information, the response, and the transcript of the evidence given before the Bar Committee, was guilty of fraud upon this Court, which, upon principle, would authorize and compel us to revoke the license granted.

Had this Court been in possession of all the undisputed facts at the time of respondent's admission, or soon thereafter, there would have been no hesitancy in refusing him admission, or entering an order striking respondent's name from the roll of attorneys of this Court, and disbarring him from the practice of law on the ground that respondent was not a person of good moral character, In re Price 235 N. Y. S., 601; *State ex rel. etc.* v. *Gilmore,* 214 Ill. 569; In the matter of Albert W. Galland, 96 Cal. App. 655.

By his response filed herein, respondent admits that on at least three different occasions he was made a defendant in a legal action. In each of these actions his moral character was challenged. In the first action he was acquitted. In the second and third, the judgment was against him.

It is too plain for argument that the facts charged in the information and admitted in the response involved moral turpitude, and were of such a character that respondent had no right to withhold them from the Court in connection with his application for admission to practice law. He had no right to decide for himself a question which necessarily would have had an important bearing upon the inquiry to be made by the Court in connection with his application. To hold otherwise would practically oust this Court of jurisdiction to pass on the moral character of an applicant to practice law. *People* v. *Seccombe,* 103 Cal. App. 306.

Respondent must have known that this Court, if it had been in possession of all the facts set out in his response, would have hesitated to accord to him the high privilege of practicing law. But, in addition to all this, he adds another, and possibly a more serious act, and that was his false answer, under oath to question No. 10. By so doing, he demonstrates conclusively his willingness to deceive a court to accomplish his purpose, even if it were necessary to answer falsely under oath.

It is essential to the usefulness of an attorney that he be fair, open, and honest in his relations with the Court, and that he so conduct himself as to command the confidence of the community wherein he resides and practices his profession. The statute, Sect. 4-3608 Burns' St. 1933 (Act 1881) (Spec. Sess.) p. 240, enumerates some of the duties of an attorney. One of the duties so prescribed and enjoined is that an attorney should "never seek to mislead the Court or jury by any artifice or false statement of law or fact." This duty is also incorporated in the oath to which respondent subscribed upon his admission to the bar. Respondent's willful omission to mention his unfortunate experiences considered in connection with his false answer under oath was reprehensible and calculated to deceive this Court.

It was said in the case of *In re Bradley*, 14 Idaho 784,

"A person applying for admission to practice as an attorney in the Courts of this State, or who, after admission, views so lightly the obligations of the office of an attorney as to willfully misrepresent the facts as to his own qualification or standing, * * * renders himself unfit to associate with the legal profession of this state or be recognized as a member of the bar."

Even though respondent gained his admission by fraud and deceit, he apparently insists that his conduct since his admission has been such that this Court should not now enter an order of disbarment. He brings to the attention of the Court that he is a member of a national legal order; that he is a member of the Young Lawyers Association; that he has practiced law for seven years, and that no complaint has been made concerning his professional conduct; that twice has he been nominated by his political party for high office; one of these nominations was for a position as Superior Court Judge. In his response he, at different times affirms that he had no intention to deceive this Court by his failure to answer question No. 10 truthfully. In effect he now insists that he is a person of good moral character and possesses the requisite qualifications to continue in the practice of law.

As stated above, Mr. Hartman appeared before a committee of the Indianapolis Bar Association, and his sworn statement made to that committee is before us. On page 81 and 82 of this transcript it appears the following question was asked Mr. Hartman by Judge Gause, a former member of this Court.

"Mr. Gause: You knew of all of these facts didn't you, Joe, when you signed this application for admission to the bar?"

"Mr. Hartman: Well, I'll tell you, I never intentionally intended to deceive the Court in answering that question. It was an unhappy chapter of my life which I had completely forgotten and which anyone else would have wanted to forget."

In his response, page 8, we find the following statement.

"My withholding of any information from this Court concerning said trial and said charges was not due to any attempt on my part to fraudulently

gain admission as a member of the Bar, but was the result of my belief that said question related to conviction for crime and, frankly, was an attempt on my part to bury a most painful and humiliating experience which had occurred long in the past, and which I believed not to be material to the Bar Examiners."

On page 10 of the response we find this statement.

"At the time I answered said question, the only legal proceeding that came to my mind was the said civil suit brought against me by Alpha M. Harrop. At that time I had told none of my friends or relatives in Indiana concerning said action; it had ruined me financially; it had haunted me as long as I lived in Dayton, Ohio; and it was one of the principle reasons for my removing to Indiana where I would not be constantly required to explain the facts concerning said suit. I was beginning life anew, about to enter into a new profession, and desired only to bury the past."

We are convinced that the real reason for respondent withholding information concerning his past life is to be found in the last above quoted statement. This is evident from his various statements as well as his subsequent statements and conduct.

The facts about respondent's earlier life were brought to light during the last days of a political campaign in which respondent was a candidate for a judgeship. This Court is not concerned with the motive which prompted an investigation of respondent's activities; but we are concerned in the facts themselves. Mr. Hartman, in his statement before the committee, (Transcript p. 56) stated:

"Yes, and I realized also that what I might say might injure every candidate on the Republican ticket. For that reason I entered a blanket denial when I was asked about it, just the same as you filed a general denial in an action in court."

It is clear that Mr. Hartman realized at the time he was confronted with the charges herein made, that the truth, if made public, would not only injure him, but would also injure innocent parties who were on the ticket with him. He knew when he entered the field of politics, and especially when he became a candidate for a political office, his past life would become the subject of careful examination, and if anything unfavorable should be discovered, it would be made public. Respondent also knew that there were incidents in his past life, if discovered and made public, would injure him and his friends. He also felt quite sure, if he told his political friends the facts concerning his past, he would not, in all probability, be chosen as a candidate. However he took the chance of such facts not becoming known to the people of Indianapolis. Respondent could not be criticized for wanting to keep silent the facts charged in the information and admitted in his response, but he is subject to severe criticism for imposing upon the public and his friends. He willfully and knowingly assumed the risk of inflicting injury and embarrassment upon the very people who had befriended him by giving him a place upon the ticket of his party. He thereby evidenced his willingness to still practice deceit. When we consider the contradictory statements as herein set out; that they were made under oath; and respondent's conduct since his admission to the bar, the conclusion is irresistible, that respondent has not departed from nor forsaken his former ways, and that he is not now a person of good moral character.

Whether a person who obtains his admission to the bar by fraud could so reform and forsake his former ways and by his exemplary conduct over a period of years, build up and establish such a reputation for good

moral character as would avoid disbarment when the original fraud was discovered, is a question we need not here decide.

The judgment of the Court is that respondent's name be stricken from the roll of attorneys of the Court, and that he be and is hereby disbarred from the practice of the law in all courts of the state of Indiana.