614 P.2d 832

**In the Matter of the Application of Jeffrey H. GREENBERG To be admitted as a Member of the State Bar of Arizona.**

**No. SB–190.**

Supreme Court of Arizona,
En Banc.

July 8, 1980.

---

Slutes, Browning, Zlaket & Sakrison by William D. Browning, Tucson, for petitioner.

James W. Stuehringer, Tucson, for respondent.

HAYS, Justice.

This matter is before the Supreme Court on a Petition for Review, asking that the court determine that the applicant possesses the requisite good moral character for admission to the State Bar of Arizona. On February 6, 1980 the Committee on Character and Fitness made findings and concluded that it was unable to recommend the applicant for admission.

In July 1975 applicant took and passed the Bar examination. After a character investigation had commenced, he withdrew his application in January of 1976. Thereafter, in April of 1979 applicant reapplied for admission and a hearing was held on December 15, 1979 before the Character and Fitness Committee. The hearing lasted one full day.

The evidence presented at the December 15, 1979 hearing indicates the following factual background. Applicant arrived in Tucson with his wife in July 1972 to attend the University of Arizona Law College. Short-ly thereafter, he became involved in selling marihuana to friends in the eastern part of the United States. This involvement continued for something over six months and netted applicant a profit of $6,500 to $8,000.

In his testimony at the hearing before the Committee, applicant indicated that he stopped dealing in marihuana because it was inconsistent with his desire to become a lawyer. He considered marihuana illegal but not immoral.

The applicant did well in law school, was chairman of the Appellate Advocacy Board, and received an award for outstanding contribution to the law school. In January of 1975 he submitted an application for admission to the Bar.

Thereafter, on September 2, 1975 applicant was asked to meet with two members of the Committee to discuss his involvement in selling marihuana. He was told of his right to counsel but he did not engage counsel and, at the meeting, denied under oath the allegations.

After this meeting, applicant, realizing the possibility of federal indictment, hired counsel. As previously indicated, the application for admission was withdrawn.

In the spring of 1979, following his reapplication to be admitted, he had a discussion with bar counsel with whom he was friendly. The bar counsel asked him if his position would be different from that asserted at the meeting in 1975 with the Committee wherein he denied involvement with marihuana. Applicant indicated that his position had not changed.

In addition to the marihuana transactions, applicant had another problem. In 1973 he had no income other than the profits from the illegal transactions and he had filed no tax return. He had been contacted by the Internal Revenue Service but he ignored their inquiries.

In late September or early October the applicant contacted his current counsel. Thereafter a decision to file an income tax return was made, and applicant made his decision to admit his involvement in mari-

huana transactions. The income tax return was filed in December of 1979.

A number of character witnesses came forward to testify on behalf of the applicant, including a Tucson lawyer for whom he has worked as a law clerk since October 1976. Other attorneys who were or had been in law enforcement and a superior court judge testified.

In his brief the applicant states the following to be the issues presented by his Petition for Review:

"Does Applicant possess the requisite good moral character, at this time, to become a member of the State Bar of Arizona despite the following:

"1. His admission he committed a crime in 1973;

"2. His admission he did not report illegal income, obtained in 1973, to the Internal Revenue Service until 1979;

"3. His admittedly having testified falsely to a Committee of this Court in September, 1975;

"4. Delaying his decision to make full disclosure of these facts until obtaining the advice of counsel."

It is an applicant's burden to establish his good moral character. *Application of Levine*, 97 Ariz. 88, 397 P.2d 205 (1964). When an applicant fails to convince the Committee on Character and Fitness of his good moral character, the Committee has a duty not to certify his name to this court for admission. *Application of Levine, supra.* On Petition for Review to this court the decision as to an applicant's good moral character must be made by this court on an *ad hoc* basis. *Application of Ronwin*, 113 Ariz. 357, 555 P.2d 315 (1976).

In the past this court has wrestled with the concept of good moral character. The applicant concedes that at the time of the original application in 1975 he lacked

the requisite good moral character, but urges that his subsequent actions as reflected by the parade of character witnesses evidences complete rehabilitation. Of course it is his moral character as of now with which we are concerned.

Bar counsel in both his brief and argument urges us to look to the standard discussed in *Application of Walker*, 112 Ariz. 134, 539 P.2d 891 (1975). There, we quoted from a North Carolina case which defined "upright character" which is synonymous with our phrase "good moral character." The quotation reads:

" 'Upright character' * * * is something more than an absence of bad character. * * * It means that he [an applicant for admission] must have conducted himself as a man of upright character ordinarily would, should, or does. Such character expresses itself not in negatives nor in following the line of least resistance, but quite often in the will to do the unpleasant thing if it is right, and the resolve not to do the pleasant thing if it is wrong. *In Re Farmer*, 191 N.C. 235, 238, 131 S.E. 661, 663 (1926)." 112 Ariz. at 138, 539 P.2d at 895.

Applying the foregoing standard and examining the total record before us, we conclude that applicant's decision to make an open, honest and full disclosure came only in slow stages and was reached, at the earliest, in October of 1979, less than a year ago. We note that when he was asked by bar counsel what his position on the marihuana problem would be, he indicated that his position of noninvolvement was unchanged.

On the reapplication for admission filed April 19, 1979, the applicant answered question 18 in an unresponsive and evasive way.[1] He was not yet ready to face the truth; this was only some 15 months ago.

---

1. "18. Is there any other incident or occurrence in your life, which is not otherwise referred to in this application, which has a bearing, either directly or indirectly, upon your character or fitness for admission to the bar?

___Yes___
Yes or No

"If so, state full details.

"ANSWER: I believe my employment for the past two and one-half years by Lawrence P. D'Antonio as a law clerk has made me aware

The applicant has not sustained his burden of showing good moral character. Rehabilitation is seldom accomplished in an instantaneous fashion. By this we do not make light of the testimony of the fine people who came forward as character witnesses. Applicant is intelligent, with an engaging and winning personality, but we are not convinced that he as yet evidences the requisite good moral character.

The relief sought is denied without prejudice to the filing of a reapplication two years after the issuance of the mandate herein.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.

of the responsibilities a lawyer must carry. I believe I have learned the manner in which a law office should be run, from filing systems and calendar control to client trust funds. Additionally, my apprenticeship has allowed me to benefit from the experience of a fine teacher. My experience with Mr. D'Antonio has been a great asset to me and bears directly on my fitness for admission to the bar for the reasons stated above."