533 A.2d 278

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Michael Patrick KEEHAN.**

**Misc. (Subtitle BV) No. 1, Sept. Term, 1987.**

Court of Appeals of Maryland.

Nov. 20, 1987.

---

Melvin Hirshman, Bar Counsel and Kendall R. Calhoun, Asst. Bar Counsel, for the Atty. Grievance Com'n of Maryland.

Robert E. Cahill, Sr., Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

The Attorney Grievance Commission charged Michael Patrick Keehan with violation of former Code of Professional Responsibility, DR 1–101(A):

A lawyer is subject to discipline if he has made a materially false statement in, or if he has deliberately failed to disclose a material fact requested in connection with, his application for admission to the bar.[1]

Pursuant to Md. Rule BV10, we referred the matter to the Honorable A. Owen Hennegan of the Circuit Court for Baltimore County. Judge Hennegan made findings of fact that led him to conclude that Keehan had violated DR 1–101(A).[2] The Commission recommends disbarment. We accept the recommendation.

Judge Hennegan, in pertinent part, found that:

---

**1.** On 15 April 1986 we amended Md. Rule 1230 to repeal the Code of Professional Responsibility and to adopt the Rules of Professional Conduct, effective 1 January 1987. The conduct involved in this case occurred before 1 January 1987. The current provision comparable to DR 1–101(A) is Rule 8.1.

**2.** Also before Judge Hennegan were charges that Keehan had violated DR 1–102(A)(1) (3) (4) (5) (6). These charges, which Judge Hennegan found to be substantiated in part, were based on several incidents in which Keehan had obtained money through the submission of false insurance claims. When the incidents occurred Keehan was a resident of Maryland and a member of the Pennsylvania Bar. He was not then a member of the Maryland Bar. Criminal charges relating to those claims were nol-prossed when Keehan made restitution. When the complaint against Keehan had been forwarded to the Inquiry Panel, but before that panel's hearing, the arrest record was expunged pursuant to Md. Code, Art. 27, § 737. Keehan argued to Judge Hennegan (and to us) that under the BV Rules and Rule 1230, there was no jurisdiction to discipline him for acts that he committed when he was not a member of the Maryland Bar. He also argued that Art. 27, § 740(b) precluded consideration of the conduct the records of

Michael Patrick Keehan is ... 45 ... years of age....
[After military service he obtained a B.S. degree from
West Virginia Technical College in 1966.] He then be-
came employed by Crawford and Company, an indepen-
dent insurance adjusting firm in Baltimore.... He was
thereafter employed as a senior adjuster with Commercial
Union Insurance Company from 1968 to 1972. He was
admitted to the University of Baltimore School of Law in
1968 and received his Juris Doctor degree in 1973. In
September, 1972 he entered the employment of the United
States Fidelity and Guaranty Company in Baltimore
where he remained until March, 1982. He sat for the
Maryland Bar examination in February, 1973; February,
1974 and February, 1975, at which times he was unsuc-
cessful. In November, 1974 he was admitted to the Bar
of the [Commonwealth] of Pennsylvania after having
successfully passed that bar examination. At all perti-
nent times, [Keehan] was a resident of ... Baltimore
County, Maryland and employed as an adjuster for the
United States Fidelity and Guaranty Company.[3] After
his admission to the [Pennsylvania Bar] he continued his
employment in Baltimore ... as a claims adjuster and at
the same time shared a law office gratuitously in York,
Pennsylvania with a local (York, Pa.) attorney. His prac-
tice in York was minimal.... He maintained the office in
York, Pa. from 1975 until 1982 when he went into private
practice in Towson, Md....

Judge Hennegan further found that on 12 May 1980,
Keehan submitted an application for admission to the Mary-
land Bar and that he was admitted on 3 November 1981.[4]

---

which had been expunged. Because of our disposition of the case on
other grounds, we need not address either of these arguments, and we
intimate no opinion as to either of them.

3. Actually, it appears that Keehan worked for USF & G as a claims
supervisor.

4. The time lapse from May 1980 to November 1981 was in part caused
by the fact that Keehan took the limited attorney's examination that is
part of the Rule 14 admission procedure (*see* Rule 14 i) in July 1980,

The application was made pursuant to Rule 14 of our Rules Regulating Admission to the Bar. Rule 14, in pertinent part, then provided (substantially as it now provides):

a. If any member of the Bar of another State ... of the United States ... applies for admission to the Bar of this State ... he shall file with the Board [of Law Examiners] a petition, under oath, addressed to the Court of Appeals, in which he shall state

(i) that he intends to practice law in this State ...;

(ii) each jurisdiction in which, and each Court by which petitioner was admitted to the Bar ...;

(iii) that for at least five of the seven years immediately preceding the filing of his petition he has been regularly engaged ... as a practitioner of law....

\*    \*    \*    \*    \*    \*

d. For purposes of this Rule a practitioner of law is defined as a member of the Bar of another State ... of the United States ... who throughout the period specified in the petition has regularly engaged in the practice of law in such jurisdiction as the principal means of earning his livelihood and whose entire professional experience and responsibilities have been sufficient to satisfy the Board that the petitioner should be admitted under this Rule....

In the Rule 14 petition of May 1980, Keehan disclosed his admission to the Pennsylvania Bar in 1974 and indicated that the basis for the petition was that he had been a "practitioner of law as defined in Rule 14 d"—that is, one "regularly engaged in the practice of law ... as the principal means of earning his livelihood" for at least five years during the seven-year period beginning in May 1973. On his accompanying questionnaire and affidavit, the following questions and answers appear (we show Keehan's answers

February 1981, and July 1981, but did not pass it until the final attempt.

in all capital letters, to distinguish them from the printed portion of the questionnaire):

11.(a) With respect to your legal career, including temporary or part-time work, please state the following:

| Dates From/To | Address of Practice | Immediate Supervisor/ Associate | Reason for Termination |
|---|---|---|---|
| NOVEMBER 1974 TO PRESENT | SHREWSBURY, PA. YORK, PA. | SOLE PRACTITIONER SOLE PRACTITIONER | |

(b) If you shared office space with other lawyers or business firms, please so state, and give their full names and present addresses:

| Dates From/To | Address of Practice | Name of Lawyer or Business Firm | Present Address |
|---|---|---|---|
| NON | APPLICABLE | SOLE PRACTITIONER | |

12. Describe any other employment not referred to in your answer to Question 11 that you have held within the last five years, including temporary or part-time work:

| Dates From/To | Name and Address of Employer | Immediate Supervisor | Reason for Termination |
|---|---|---|---|
| | NON APPLICABLE | | |

Largely on the basis of the evidence we have recounted, Judge Hennegan found that Keehan

> did, in fact, deliberately misrepresent and make false and material misstatements in answer to questions 11(a) and (b) and further that his failure to disclose his full-time employment in answer to question 12 could have readily misled the bar examiners. The Court believes that if the examiners had been alerted, an inquiry would certainly have been made which may have divulged some material information concerning [Keehan] prior to his application and admission to the Maryland Bar.

The judge concluded, as earlier noted, that Keehan had violated DR 1–101.

■ Keehan does not dispute the facts underlying Judge Hennegan's ultimate findings; he admits he failed to disclose his space-sharing in Pennsylvania and his employment with USF & G. He does not, indeed, question the materiality of the withheld information. His argument, in essence, is that there was insufficient clear and convincing evidence

to support a finding that he deliberately failed to disclose the admittedly material facts. Before addressing this contention, however, we shall dwell briefly on the subject of materiality, for the question of intent to withhold information ordinarily should be viewed in the context of the significance of the information not revealed.

Rule 14 is designed to afford a benefit to lawyers who have practiced lawfully for at least a minimum period of time. The benefit occurs because a lawyer who meets the rule's practice requirements is excused from taking the comprehensive two-day bar examination normally required of those who seek admission to practice in Maryland. Instead, the out-of-state-attorney applicant need submit to a test of but three hours duration, with subject matter limited to practice and procedure and professional ethics. Board [of Law Examiners] Rule 3.

The reason for this privilege rests on the assumption that a lawyer who has regularly engaged in the practice of law, as a chief means of earning the lawyer's living over a period of years, has sufficient legal knowledge to demonstrate at least minimum competence; hence, it is not necessary to apply the rigors of the full examination to make that determination. *In Re Application of Mark W.,* 303 Md. 1, 8–9, 491 A.2d 576, 579–580 (1985). It is, therefore, of basic importance that the Board of Law Examiners has before it information from which it can determine whether a Rule 14 applicant has engaged in practice to the extent required by the rule. Thus, it is important that an applicant disclose to the board all facts bearing on this subject.[5]

■ A material omission, Chief Judge Murphy has explained for the Court, is "one that 'has the effect of inhibiting the efforts of the bar to determine an applicant's

---

5. Both the board and the National Conference of Bar Examiners, which verifies character references and certain other information in Rule 14 applications, rely to a considerable extent on information supplied by the applicant with respect to extent of practice and employment history.

fitness to practice law.'" *Attorney Griev. Comm'n v. Gilbert*, 307 Md. 481, 492, 515 A.2d 454, 459 (1986) (quoting *In re Howe*, 257 N.W.2d 420, 422 (N.D.1977)). For present purposes, we may rephrase the *Gilbert* language to define a material omission as "one that has the effect of inhibiting the efforts of the board to determine whether an applicant's practice of law has been extensive enough to justify his enjoyment of the Rule 14 privilege." In this context, Keehan's omissions were obviously material. Had the board been made aware of the Pennsylvania office-sharing arrangements, it could have inquired of the office proprietor about the extent of Keehan's practice.

Even more to the point, had the board been informed of (and checked into) Keehan's employment at USF & G during the critical 1972–1980 time frame, the Rule 14 application would undoubtedly have been rejected. At the hearing before Judge Hennegan, Keehan said that his work as a claims supervisor was full-time, forty hours a week. He admitted that in his Pennsylvania practice he handled but "ten to fifteen cases a year" and "worked about fifteen hours a week ... on the practice." This desultory activity simply does not show one "who throughout the period specified in the petition has regularly engaged in the practice of law ... as the principal means of earning his livelihood...." Rule 14 d. For cases enforcing this requirement, *see In Re Application of Mark W., supra; In Re Lohmeyer*, 218 Md. 575, 147 A.2d 703 (1959); *Appeal of Wilbur Rogers*, 192 Md. 737, 83 A.2d 517 (1946).

The information Keehan withheld, then, was clearly material. And we believe Judge Hennegan was not clearly erroneous when he found the material had been deliberately withheld.

To be sure, Keehan testified that he had not intended to mislead the board. He told Judge Hennegan that he read Question 11 as requiring disclosure of space-sharing only if it had some economic aspect, such as payment of rent (there was no such arrangement attached to Keehan's

space-sharing). He said he thought that Question 12 related, despite its plain wording, only to legal employment (which his work at USF & G was not). But Judge Hennegan, like Judge Thieme in *Gilbert,* was entitled to disbelieve Keehan's explanations. 307 Md. at 490, 515 A.2d at 458. As in *Gilbert,* an explanation that a law school graduate did not, under the circumstances here, understand this clearly worded question strains the imagination. *Id.*

Moreover, Keehan testified that he had read the Rule 14 d definition of practice of law before filling out the questionnaire. A fact-finder could infer from the circumstances present in this case that Keehan, aware of the practice requirements of Rule 14, aware of his apparent inability to pass the Maryland bar examination, and aware of his only occasional practice in Pennsylvania, deliberately concealed his employment at USF & G so that the board would be unaware that this employment, and not the practice of law, was his principal means of livelihood. Judge Hennegan did so infer. His factual findings are "prima facie correct and ... will not be disturbed unless clearly erroneous." *Gilbert,* 307 Md. at 490, 515 A.2d at 458. They are not clearly erroneous.

■ Having reached that conclusion, the question of sanction remains. In *Gilbert* we observed that "no moral character qualification to practice law is more important than truthfulness and candor...." 307 Md. at 496, 515 A.2d at 461–462. We held that "Gilbert's deliberate failure to disclose [material information] plainly reflects on his truthfulness and candor during the application process and hence upon his present moral character fitness to practice law in this State." 307 Md. at 496–497, 515 A.2d at 462. This holding applies with equal force to Keehan. We impose upon him the same sanction we imposed on Gilbert—disbarment.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSU-

ANT TO MARYLAND RULE BVl5C FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MICHAEL PATRICK KEEHAN.