68 A.3d 797

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Cristine A. KEPPLE.

Misc. Docket AG No. 55, Sept. Term, 2007.

Court of Appeals of Maryland.

June 21, 2013.

Fletcher P. Thompson, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Edward Hutchins, Esq. (Baltimore, MD), for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY,* ADKINS and BARBERA, JJ.

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

PER CURIAM.

Petitioner, the Attorney Grievance Commission ("AGC"), acting through Bar Counsel, filed, in accordance with Maryland Rule 16–751,[1] a Petition for Disciplinary or Remedial Action against Cristine Kepple ("Respondent") for violation of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"). Petitioner alleges that Respondent violated MLRPC Rule 8.1(a) (Bar Admission and Disciplinary Matters)[2] when Respondent failed to inform the Maryland State Board of Law Examiners on her application for admission to the Maryland Bar that she had knowingly concealed from her law school, West Virginia University College of Law, that she was not a resident of West Virginia at any time during her law school career, all in order to receive the benefit of in-state tuition at that institution. She is thus, Petitioner submits, subject to this Court's disciplinary authority.[3]

---

1. Rule 16–751 provides, in relevant part,
 (a) Commencement of disciplinary or remedial action.
 (1) *Upon approval of Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MLRPC Rule 8.1(a) states:
 An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
 (a) knowingly make a false statement of material fact[.]

3. MLRPC 8.5(a) provides this Court with disciplinary authority over lawyers admitted to practice in Maryland. It states, in relevant part:
 (a) Disciplinary Authority.
 (1) A lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State, regardless of where the lawyer's conduct occurs.
 (2) A lawyer not admitted to practice in this State is also subject to the disciplinary authority of this State if the lawyer
 (i) provides or offers to provide any legal services in this State,
 (ii) holds himself or herself out as practicing law in this State, or
 (iii) has an obligation to supervise or control another lawyer practicing law in this State whose conduct constitutes a violation of these Rules.
 Respondent was admitted to the Maryland Bar in December of 1994.

In accordance with Maryland Rule 16–752(a),[4] we referred the Petition to the Honorable John H. McDowell of the Circuit Court for Washington County for an evidentiary hearing and to make findings of fact and conclusions of law in accordance with Maryland Rule 16–757.[5] Following such a hearing, Judge McDowell issued his Findings of Fact and Conclusions of Law, in which he concluded, by clear and convincing evidence, that Respondent violated Rule 8.1(a).

## I. The Hearing Judge's Findings of Fact and Conclusions of Law

Respondent graduated from the University of Maryland at College Park on December 22, 1989, with a Bachelor of Science degree in the field of agricultural and resource economics. During her time as an undergraduate student, Respondent, a life-long resident of Garrett County, Maryland, prior to commencing her undergraduate studies, received in-state tuition as a Maryland resident.

After graduation, Respondent worked from January through August, 1990 for the U.S. Department of Agriculture

---

**4.** Maryland Rule 16–752(a) provides, in pertinent part, that "[u]pon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record."

**5.** Maryland Rule 16–757, which details the procedure for a judicial hearing held upon the filing of a Petition for Disciplinary or Remedial Action, states, in relevant part:

(b) *Burdens of proof.* The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) *Findings and conclusions.* The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

in Washington, D.C., as a marketing specialist for the Dairy Division of the Agriculture Marketing Service. There, Respondent oversaw a dairy farmer-funded promotion and research program; evaluated plans and budgets for proposed research projects; wrote reports; and reviewed proposed federal orders, proposed legislation, and contracts. Respondent moved to Terra Alta, West Virginia, in August 1990, while she was employed with the City of Morgantown as an Assistant City Planner. In this position, Respondent was, among other things, "[r]esponsible for [the] application, implementation, and evaluation of [a] Small Cities Block Grant Program and Rental Rehabilitation program." Also in 1990, Respondent became engaged to Barry Sweitzer, a co-worker for the City of Morgantown, West Virginia.

After taking the LSAT in June of 1990, Respondent decided to apply for admission to the West Virginia University College of Law. She met with the Director of Admissions and Student Affairs of the law school, Janet Long Armistead, several weeks prior to October 2, 1990, after relocating to West Virginia. During that meeting, Respondent posed "questions regarding residency and application requirements" that would permit her to "meet the August 26th deadline for residency."

On Respondent's application for admission, prepared that same day, Respondent stated that her mailing address was P.O. Box 387, Terra Alta, Preston County, West Virginia, and that she was a permanent resident of West Virginia. As noted by Judge McDowell,

> In question 6 on the first page of the application it was noted that "if you graduated from an out of state college, or had been a resident of West Virginia for less than one year, you may be asked to furnish acceptable proof of residency to be admitted as a West Virginia resident." On the last page of the application, appearing above her signature, was the following: "Furnishing or causing to be furnished false information for the purpose of your law school application constitutes grounds for disciplinary action, including, but not limited to, expulsion or revocation of one's acceptance *ab initio*. I certify that the information herein is complete and

accurate and that I will inform this law school promptly of any material change in any of the information given in response to the questions above."

(Internal citations omitted).

In May of 1991, Respondent moved from Terra Alta, West Virginia, to a home that she purchased on Bethlehem Road in Oakland, Maryland. She and Barry Sweitzer were married on August 17, 1991. Shortly thereafter, she began law school at West Virginia University in Morgantown, West Virginia, on or about August 26, 1991. Respondent surrendered her West Virginia driver's license to the Maryland Motor Vehicle Administration on November 21, 1991, and obtained a Maryland license, which listed her address as Route 3, Box 8910, Oakland, Maryland 21550. She paid income taxes to West Virginia for 1991 and part of 1992, but thereafter paid state tax obligations only to Maryland.

Although Respondent left West Virginia before commencing law school and was a permanent resident of Maryland throughout her law school career, she did not inform West Virginia University or the law school of her change of residence. Rather, Respondent maintained the post office box in Terra Alta, West Virginia, as her address on file with the University. Respondent claimed that she continued to use the Terra Alta post office box because she wanted to consolidate her mail at one address, and because Garrett County, Maryland, was in the process of changing "all mailing addresses from rural route and box numbers to street names and numbers to assist with 911 responses within that county." Respondent received her law school tuition bills, correspondence from her undergraduate school and former employers, magazines, periodicals, and miscellaneous mail at the post office box in West Virginia, but she also received utility bills, tax bills, bank statements, and other correspondence at her Oakland, Maryland, address. Respondent continued to utilize the Terra Alta post office box, located approximately eighteen miles from her Oakland home, throughout her law school career.

Because West Virginia University assumed that Respondent remained a West Virginia resident, Respondent benefitted by paying the reduced, in-state tuition rate throughout her three years of law school. She paid tuition, per semester, of $973.00 in 1991, $1,017.00 in 1992, and $1,068.00 in 1993. Non-resident tuition was at the time, per semester, $2,628.00 in 1991, $2,877.00 in 1992, and $3,078.00 in 1993. Thus, Respondent would have paid an additional $11,050.00 to West Virginia University over those three years had the University been aware of her true residency status. Respondent financed her education with a student loan in 1991, and thereafter by payments made out of a bank account drawn on a line of credit from a West Virginia bank and secured by a home equity loan, for which her Oakland, Maryland, residence served as security. The drafts for those payments noted her Maryland address. Respondent admitted that, when she applied to law school, she was aware of the difference in price between in-state and out-of-state tuition. She stated, however, that she assumed that the price differential was merely a policy decision made by the University, and that her residency for tuition purposes was determined and became fixed as of the date of her application for admission.

Respondent received her Juris Doctor degree from West Virginia University College of Law on May 15, 1994. On May 16, 1994, she prepared her application for admission to the Bar of Maryland. Question 17 of her application asked whether there had been

> any circumstances or unfavorable incidences in your life, whether at school, college, law school, business or otherwise, which may have a bearing upon your character or fitness to practice law, not called for by the questions contained in this questionnaire or disclosed in your answers?

Respondent answered no to Question 17. Accordingly, as noted earlier in this opinion, Respondent was admitted to the Bar of Maryland in December of 1994.

The Attorney Grievance Commission received a complaint in 2007 from Respondent's by-then ex-husband, Barry Sweitzer,

bringing to its attention Kepple's manipulation of her residency status vis a vis her law school tenure. Respondent claimed that, prior to receipt of a copy of the complaint, she did not realize that she incorrectly paid tuition as an in-state student.

In considering Respondent's proffered defense to Bar Counsel's complaint—that she believed that her West Virginia residency was established upon application and not subject to later modification—, Judge McDowell found that it was unsupported by credible evidence. Specifically, Judge McDowell noted that Respondent "could not point definitively to any statements made by either an official of the University or anyone whatsoever, which led her to believe that her domicile at the time of application was determinative of her residency throughout the time that she attended law school." Rather, finding that Respondent was an intelligent young woman who demonstrated that she was capable of significant responsibility in her employment prior to law school, and that Respondent had previously engaged in conversation with the law school's Director of Admissions and Student Affairs relating in part to residency and application requirements, Judge McDowell concluded that Respondent "had some understanding of the importance of her residency to the establishment of her status as an in-state student." Moreover, despite Respondent's failure to inform the University of her true residency status, Judge McDowell noted that Respondent demonstrated her recognition of the need to inform the school of important changes in her life. Specifically, on September 12, 1991, Respondent completed a name change request form and filed it with the Admissions and Records Department of West Virginia University indicating that, as a result of her marriage on August 17, 1991 to Mr. Sweitzer, her name had been changed from Cristine Ada Kepple to Cristine Kepple Sweitzer. Thus, although Respondent was young and inexperienced at the time she made the alleged misrepresentation, Judge McDowell, "having observed [Respondent] and heard her testify," found it

improbable that she, from the date of her application to the law school through her graduation, would not have known

the importance of continuing to inform the law school of her permanent address and domicile in order to allow the University to calculate an appropriate tuition payment . . . [T]he reasons given for failing to provide West Virginia with her actual permanent address lack[ ] foundation and are, therefore, not credible. The only reasonable inference that can be drawn from her omission is that she intentionally withheld the information in order to receive the benefit of reduced in-state tuition although she was not entitled to such an advantage.

Because he found that Respondent was aware that she was erroneously receiving the benefit of in-state tuition throughout law school, the hearing judge also found it "impossible to conclude other than that the [R]espondent was aware, two days after her graduation, that an unfavorable circumstance or incident in her life had occurred which was required to be disclosed to the State Board of Law Examiners in her application and in response to question 17." Thus, Judge McDowell found that Respondent "intentionally withheld important information that was required to be disclosed to her law school and university," and her failure to disclose the information on her bar application constituted an intentional concealment of material fact depriving the Character Committee of the State Bar "the opportunity to investigate those matters that may have shown that she possessed other than the moral and character qualities necessary for the practice of law." Therefore, Judge McDowell concluded, by clear and convincing evidence, that Respondent violated MLRPC 8.1(a).

Respondent filed exceptions, which we shall discuss shortly.

## II. Analysis

The Court of Appeals has "original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance Comm'n v. Penn,* 431 Md. 320, 333, 65 A.3d 125, 133 (2013) (quoting *Attorney Grievance Comm'n v. Rand,* 429 Md. 674, 712, 57 A.3d 976, 998 (2012)). Although we review the record independently, "we generally will accept the hearing judge's findings of fact, unless those findings are

clearly erroneous." *Attorney Grievance Comm'n v. Tanko,* 408 Md. 404, 418, 969 A.2d 1010, 1019 (2009). Thus, "[t]he hearing judge is appropriately responsible for, and charged with, weighing the credibility of witnesses and resolving any conflict in the evidence." *Id.* at 419, 969 A.2d at 1019–20 (quoting *Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 28, 922 A.2d 554, 570 (2007)) (internal quotation marks and alterations omitted). We review the hearing judge's conclusion of law without deference, pursuant to Maryland Rule 16–759(b)(1).[6] *Penn,* 431 Md. at 334, 65 A.3d at 133 (citing *Attorney Grievance Comm'n v. Jones,* 428 Md. 457, 467, 52 A.3d 76, 82 (2012) (per curiam)). "If the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Tanko,* 408 Md. at 419, 969 A.2d at 1019 (citations omitted).

After reviewing the record, we conclude that the hearing judge's findings of fact were not clearly erroneous and his resulting conclusions of law are supported by those facts. We shall, therefore, overrule Respondent's exceptions.

█ Respondent does not dispute the facts underlying Judge McDowell's ultimate findings, nor does she question the materiality[7] of the information allegedly withheld. Rather, Respondent argues that there was not clear and convincing

---

**6.** Rule 16–759(b)(1) states:
 (b) Review by Court of Appeals.
 (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

**7.** A material omission is "one that 'has the effect of inhibiting the efforts of the bar to determine an applicant's fitness to practice law.' " *Attorney Grievance Comm'n v. Gilbert,* 307 Md. 481, 492, 515 A.2d 454, 459 (1986) (quoting *Matter of Howe,* 257 N.W.2d 420, 422 (N.D.1977)). Had the State Board of Law Examiners been made aware, if true, that Respondent intentionally concealed information from her law school for her financial benefit, the Board would have had a reason to inquire further into Respondent's character and make an adequately-informed decision regarding her fitness to practice law. *See generally Attorney Grievance Comm'n v. Keehan,* 311 Md. 161, 167–68, 533 A.2d 278, 281 (1987) (discussing the materiality of an omission on application for admission to the Maryland Bar).

evidence to support a finding that she deliberately withheld the required information. Specifically, Respondent advances the following exceptions to Judge McDowell's findings of fact and conclusions of law: (1) Petitioner failed to establish by clear and convincing evidence that Respondent knew and understood her obligation to notify the law school of her change of address or that she acted to conceal her residency; (2) Petitioner failed to establish by clear and convincing evidence that Respondent was aware that an unfavorable circumstance or incident in her life occurred, which was required to be disclosed to the State Board of Law Examiners; and, (3) Respondent did not violate MLRPC 8.1(a) because she did not "knowingly" make a false statement of material fact on her application for admission to the Maryland Bar.

Bar Counsel bears the burden of proving, by clear and convincing evidence, the allegations against Respondent. *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 470, 671 A.2d 463, 474 (1996). The clear and convincing evidence standard is "more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 79, 753 A.2d 17, 29 (2000) (quoting *Berkey v. Delia*, 287 Md. 302, 320, 413 A.2d 170, 178 (1980)). We recognize generally, however, that the hearing judge is "in the best position to assess the credibility of a witness," and thus, where the credibility of a witness's testimony forms the basis for a finding, deference to the hearing judge's findings is appropriate. *See Attorney Grievance Comm'n v. Pak*, 400 Md. 567, 595, 929 A.2d 546, 562–63 (2007); Maryland Rule 16–759(b)(2)(B) ("If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."). *See also Tanko*, 408 Md. at 420, 969 A.2d at 1020 (noting that the hearing judge was in the best position "to evaluate the veraci-

ty of the respondent's explanation" regarding the alleged violation of the MLRPC).

██ Because the hearing judge found that Respondent's explanations for her failure to update her law school regarding her residency strained credulity, and Petitioner presented substantial circumstantial evidence tending to prove that Respondent intentionally concealed her out-of-state residency from her law school for the purpose of paying in-state tuition, we overrule Respondent's first exception. Judge McDowell found Respondent's explanation, that she believed her residency was fixed for purposes of tuition upon her admission to law school, to be unreasonable, and therefore concluded that "[t]he only reasonable inference that can be drawn from her omission is that she intentionally withheld the information in order to receive" a benefit to which she was not entitled. Because we defer to the hearing judge regarding credibility of the witness, Judge McDowell's decision to disbelieve the Respondent's testimony is within his proper purview and not clearly erroneous on this record.

Moreover, Petitioner presented circumstantial evidence from which Judge McDowell could reasonably come to the conclusion that Respondent knew, understood, and disregarded her obligation to inform the law school of her actual state of residency. *See generally Keehan,* 311 Md. at 169, 533 A.2d at 282 (determining that a hearing judge's findings of fact, based on his inference that the respondent deliberately concealed information from the State Board of Law Examiners, was not clearly erroneous). *See also Attorney Grievance Comm'n v. Joseph,* 422 Md. 670, 706, 31 A.3d 137, 158 (2011) (noting that because "residence" refers to the place where a person "actually lives," an assertion by an attorney that his residence was a UPS mailbox was untruthful (citing *Stevenson v. Steele,* 352 Md. 60, 69, 720 A.2d 1176, 1180 (1998))). Specifically, Petitioner presented evidence regarding Respondent's education and ability to handle significant responsibilities, as demonstrated by her employment preceding her enrollment in law school. Additionally, Petitioner demonstrated that Respondent previ-

ously received in-state tuition at her undergraduate institution as a Maryland resident, and later met specifically with the Director of Admissions at West Virginia University College of Law to discuss residency requirements. Moreover, Petitioner presented evidence that Respondent knew to update the law school regarding important information, such as a change in her surname, but did not do so with respect to her address. Because Respondent maintained instead a post office box in West Virginia, eighteen miles from her Maryland home, there was sufficient evidence for the hearing judge to infer that Respondent knowingly concealed her true residency from her law school. Thus, the hearing judge's finding that Respondent intentionally concealed her residency from her law school in order to receive in-state tuition was not clearly erroneous.

Similarly, Respondent argues that Petitioner presented insufficient evidence showing that Respondent answered knowingly and untruthfully question 17 of her bar application. She contends that our decision in *Attorney Grievance Commission v. Mooney*, 359 Md. 56, 753 A.2d 17 (2000), should govern our relevant analysis. In *Mooney*, we determined that the trial judge's conclusion that the respondent violated MLRPC 8.1 by lying to bar counsel's investigator was clearly erroneous. *Id.* at 80–81, 753 A.2d at 30. The hearing judge found that Mooney's assertion, that he believed a particular case had been assigned to another attorney (rather than Mooney) in his firm, was not credible and was merely an attempt to exculpate himself from wrongdoing in the mis-handling of the case. *See id.* at 80, 753 A.2d at 29 (noting that the hearing judge found that Mooney "made a false representation to the investigator for bar counsel when he told him that he believed the case had been assigned to the associate, which he does not want to admit. Although [respondent] denies making such a statement to bar counsel, the [c]ourt finds that he did."). This Court determined that, because Mooney's testimony and statements to the bar investigator were consistent, he provided a reasonable justification for his assumption that the case had been assigned to another attorney, and he acknowledged that he did not have any specific knowledge that the case was, in

fact, handled by the other attorney, the evidence was "not so clear and convincing to lead one to conclude that respondent intended to mislead the bar investigator." *Id.*

Here, by contrast, considered in light of our determination that Respondent knowingly concealed her residency from her law school, the hearing judge's determination that Respondent knowingly omitted a material fact from her bar application was not clearly erroneous. Unlike the respondent in *Mooney*, Respondent did not provide any reasonable justification for her assertion that she did not know an unfavorable circumstance or incident in her life had occurred requiring disclosure to the State Board of Bar Examiners. As Judge McDowell noted, "[h]aving concluded that she understood that she had knowingly defaulted in her obligation to inform West Virginia University of her true residency status and thus paid reduced tuition as an in-state student at West Virginia University, it is impossible to conclude other than that the respondent was aware, two days after her graduation, that an unfavorable circumstance or incident in her life had occurred which was required to be disclosed to the State Board of Law Examiners in her application and in response to question 17." Judge McDowell's factual findings are *"prima facie* correct and . . . will not be disturbed unless clearly erroneous." *Gilbert*, 307 Md. at 490, 515 A.2d at 458. Thus, we overrule all of Respondent's exceptions to the hearing judge's findings of fact.

 Because Judge McDowell's factual findings are not clearly erroneous, and the conclusion of law is supported by the factual findings, we overrule Respondent's final exception relating to her violation of Rule 8.1(a). *See Attorney Grievance Comm'n v. Mba–Jonas*, 402 Md. 334, 344, 936 A.2d 839, 845 (2007). The only question left to be determined, therefore, is the appropriate sanction.

 The disciplinary authority of this Court is "necessary 'to protect the public and its confidence in the legal profession.'" *Attorney Grievance Comm'n v. Jones*, 428 Md. 457, 468, 52 A.3d 76, 82 (2012) (per curiam) (quoting *Attorney*

*Grievance Comm'n v. Goodman*, 426 Md. 115, 131, 43 A.3d 988, 997 (2012)). As we reiterated in *Jones*,

> Because an attorney's character must remain beyond reproach, this Court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public.

428 Md. at 468, 52 A.3d at 82 (quoting *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 27, 741 A.2d 1143, 1157 (1999)). In determining the appropriate sanction for attorney misconduct, we consider "the facts and circumstances of each case, including a consideration of any mitigating factors." *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 223, 892 A.2d 533, 541 (2006) (citing *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 375, 872 A.2d 693, 713 (2005)).

 As we noted in *Gilbert*, "no moral qualification to practice law is more important than truthfulness and candor." 307 Md. at 496, 515 A.2d at 461–62. Respondent's failure to disclose material information on her bar application, no matter how far removed from the present, "plainly reflects on [her] truthfulness and candor during the application process and hence upon [her] present moral character [and] fitness to practice law in this State." *Id.* at 496–97, 515 A.2d at 462. Petitioner believes that the appropriate sanction for Respondent is an indefinite suspension with the right to apply for reinstatement after no less than one year; Respondent, by contrast, contends that, given the absence of a disciplinary record during the approximately fourteen years of practice preceding argument in this case, a public reprimand is appropriate.

 Due to the unique posture of this case, in that the operative facts only came to the attention of Bar Counsel thirteen years after the misconduct occurred, significant and unique mitigating factors exist weighing in favor of Respon-

dent. As Judge McDowell noted, Respondent has no prior disciplinary violations. In her approximately fourteen years of practicing law in Maryland preceding argument in this case, only two complaints were filed against her. Both were dismissed immediately by Bar Counsel. Moreover, the hearing judge found that the complaint filed against her in the present case "was initiated by her former husband ... merely for the purpose of retaliation." Respondent was regarded highly in Garrett County and by the partners at her law firm, and "has been known to have a very high character for honesty and veracity as well as a reputation for truth, veracity and integrity in the community in Garrett County, Maryland." Thus, Respondent's misconduct appears to be of an isolated nature in a career otherwise conforming with the rules and standards of the Maryland Lawyers' Rules of Professional Conduct. *See Prince George's County Bar Ass'n v. Vance*, 273 Md. 79, 84, 327 A.2d 767, 770 (1974) (noting that the isolated nature of Vance's intentional dishonesty weighed in favor of a lesser sanction). Moreover, Respondent was youthful and inexperienced at the time of her misconduct, which bespoke less than fully formed sound judgment.

Respondent's actions upon learning of the complaint in the present case provide further mitigation. The hearing judge found that Respondent is "truly remorseful for her actions that led to the filing of the complaint herein." She also immediately contacted her former law school and met with the Dean to offer repayment to the University for the tuition that she should have paid, but did not. The Dean declined her offer.

Although Respondent demonstrated through her years as a member of the bar that she is a highly-regarded, practicing attorney with no other ethical violations, acts of intentional dishonesty, of the sort committed by Respondent at the pre-conception of her legal career, bear seriously on an attorney's character. *See, e.g., Attorney Grievance Comm'n v. Ellison*, 384 Md. 688, 716, 867 A.2d 259, 275 (2005) ("Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important

matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." (quoting *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001))); *Vance,* 273 Md. at 84–85, 327 A.2d at 770 (noting that "[i]t is questionable whether [acts of misrepresentation and dishonesty] can ever be so lightly regarded as to result in no more than a mere reprimand"). Indeed, as Bar Counsel notes, deception of the sort at issue might ordinarily lead to disbarment. *See, e.g., Attorney Grievance Comm'n v. Seltzer,* 424 Md. 94, 34 A.3d 498 (2011); *Joseph,* 422 Md. 670, 31 A.3d 137, 158 (2011); *Attorney Grievance Comm'n v. Joehl,* 335 Md. 83, 642 A.2d 194 (1994); *Keehan,* 311 Md. 161, 533 A.2d 278 (1987); *Gilbert,* 307 Md. 481, 515 A.2d 454 (1986). *But see Vance,* 273 Md. at 84–85, 327 A.2d at 770 (imposing a ninety-day suspension for an act of intentional dishonesty).

We must, therefore, balance the gravity of Respondent's misconduct from 1994 against her subsequent behavior and conduct as a practicing attorney. Considering the length of time that passed between the misconduct and its disclosure, and Kepple's demonstrated good behavior as a practicing attorney since being admitted to the Bar, we think Bar Counsel's recommended sanction too harsh. Rather, we determine that an indefinite suspension, with the right to apply for reinstatement after no less than thirty days, is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CRISTINE KEPPLE.**